UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**JUDGE KEENAN**

**06 CV 0550**

**KARGO GLOBAL, INC.,**

Plaintiff,

v.

**ADVANCE MAGAZINE PUBLISHERS, INC.,**

Defendant.

Civil Action No. 06 CV

*JURY TRIAL DEMANDED*



RECEIVED
JAN 2 4 2006
U.S.D.C. S.D. N.Y.
CASHIERS

## VERIFIED COMPLAINT

Robert M. Kunstadt (RK-7230)
Ilaria Maggioni (IM-7220)
R. KUNSTADT, P.C.
729 Seventh Avenue
New York, New York 10019
(212) 398-8881

Counsel for Plaintiff
Kargo Global, Inc.

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

KARGO GLOBAL, INC.,

                     Plaintiff,

        v.

ADVANCE MAGAZINE PUBLISHERS, INC.,

                     Defendant.

Civil Action No. 06 CV

## VERIFIED COMPLAINT

Plaintiff, through its attorneys, alleges for its complaint against Defendant:

## JURISDICTION AND PARTIES

1. Plaintiff KARGO GLOBAL, INC., ("Kargo") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 139 Centre Street, 6th Floor, New York, NY 10013.

2. Upon information and belief, Defendant ADVANCE MAGAZINE PUBLISHERS, INC., ("Advance") is a corporation organized and existing under

the laws of the State of New York, with its principal place of business at 4 Times Square, New York, NY 10036 (Kargo and Advance are collectively referred to as the "Parties").

3. This is a civil action for false designations of origin and false descriptions and representations in violation of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a), for trademark infringement in violation of the Trademark Act of 1946, 15 U.S.C. § 1114, and for related claims under the laws of the State of New York and at common law for unfair competition, trade dress infringement, unfair trade practices and deceptive acts.

4. The Court has jurisdiction over the subject matter of this action under 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338(a) and (b), as it involves substantial claims arising under the Trademark Act of 1946, 15 U.S.C. § 1051 *et seq.*, as amended, combined with related claims for unfair competition, trade dress infringement, unfair trade practices, and deceptive acts arising under state law; and under 28 U.S.C. § 1367 under the principle of supplemental jurisdiction.

5. Venue is proper under 28 U.S.C. § 1391(b) and (c).

2

**FACTS COMMON TO ALL COUNTS**

THE PARTIES

6. Kargo assists among other things media companies including magazine publishers to bring their traditional print offerings to a web and wireless platform. Kargo (and its predecessors) has been, since at least as early as 1999, engaged in the business of providing goods and services for the mobile, internet and wireless industries. Kargo's software applications allow companies to deliver wireless data to consumers via two-way pagers, mobile phones, personal digital assistants, and the like ("wireless connectivity devices"). Kargo also brings its own wireless data and services to end users such as ringtones, games, and images of celebrities, via wireless connectivity devices. Kargo's business conducted under the  trademark and trade name KARGO helps companies develop an internet and wireless strategy and infrastructure using the latest in internet and wireless technologies to make full use of online media to complement traditional offline media (such as print publications) for seamless delivery to wireless connectivity devices.

7. In so doing, Kargo co-brands the resulting products with a combination of the publisher's brand, and the brand KARGO (in the general form *MAGAZINE TITLE* POWERED BY KARGO). Hence, the brand KARGO is known not only to the magazine publishers who are Kargo's direct customers, but also to

3

consumers who regularly see the KARGO brand on their wireless connectivity devices and in the accompanying marketing materials, as well as in full page advertisements that appear on Kargo's clients' magazines.

8. The inherent distinctiveness of the KARGO mark, which stems from its origin as an arbitrary variation of its creator's last name "Kargman", is surely enhanced by Kargo's sales, promotion and advertising which has established the KARGO mark as well known to customers. The KARGO mark is strong and thus entitled to broad protection.  By virtue of its success in the communications services industry and with products related thereto, the name and mark KARGO are recognized and relied upon by the trade and public to identify exclusively Kargo's goods and services used and sold under license, and to distinguish them from the goods and services of others, and the widespread use of the mark on or in connection with such goods and services has come to reflect, represent and symbolize extremely valuable goodwill belonging exclusively to Kargo's licensor, whose rights Kargo is entitled to assert in these proceedings together with its own rights as exclusive licensee, as explained in detail below. An example of recognition of the KARGO name in the wireless field in February 2001 is a Morgan Stanley Dean Witter presentation entitled  "The M Files - Developing Usable Apps with Kargo" featuring Kargo's CEO as keynote speaker (attached as Exhibit A).

4

9. On information and belief, Advance is a publisher of print magazines, including (since 2004) one entitled CARGO. That magazine resembles a "Ladies Home Journal" for men: it focuses on clothes, gadgets, news and information likely to interest male readers (including an editorial shopping guide specifically targeted at a male audience). Advance's print magazine, CARGO, reviews, advertises and promotes high-tech goods including but not limited to phones, personal digital assistants, wireless services for laptop computers and the like, and provides information concerning the internet, as well as offering online content at an affiliated website, www.cargomag.com. In Advance's own words:

> "CARGO's product based men's lifestyle premise represents a defining difference in a crowded space that's starting to lack definition. It also continues to reinforce a profound change in what affluent young men demand of their magazine reading. CARGO fuels this young men's curiosity with information that affects and affirms all aspects of his life from his personal style to the car he drives, the iPod and Treo he covets to the place he calls home. If aspiration and ambition are his watchwords you can see why CARGO is his magazine." (Advance's CARGO Concept/Mission Statement, attached as Exhibit B hereto).

As further detailed herein, in or around September 2005, Advance launched a web page and a service for wireless connectivity devices, to make available its CARGO magazine content on wireless connectivity devices, and now instructs readers on how to download such content under a section of the printed magazine entitled "CARGO TO GO", and on the "Instant Replay" page of the www.cargomag.com website. Advance's recent launch of CARGO magazine by cellphone and other wireless connectivity devices threatens an imminent change in the status quo with resulting irreparable harm to Kargo's core business.

5

PRIOR TRADEMARK OFFICE PROCEEDINGS

10. On May 27, 2003, Advance filed an intent-to-use application for its alleged mark CARGO for goods and/or services in International Classes 16, 35 and 41, which was assigned Serial No. 78/254528 at the U.S. Trademark Office.

11. On August 22, 2003, Advance filed another application for a CARGO logo for goods and/or services in International Classes 16, 35 and 41, which obtained registration under U.S. Registration No. 2,986,284 and claims a first use date of March 9, 2005. Advance also more recently applied for two more intent-to-use CARGO applications: U.S. Serial No. 76/633942 CARGO CARAVAN for services in International Class 35 filed March 15, 2005; and U.S. Serial No. 76/644437 CARGO for services in International Class 41 filed August 5, 2005.

12. Earlier than May 27, 2003 and long prior to any date of priority or use that Advance can be entitled to, Kargo (and its predecessors) has continuously used (in intrastate and interstate commerce) under license the trademark and trade name KARGO and other marks and logos which feature the designation KARGO on or in connection with its business and expanding line of

6

goods and services. A flyer for one of Kargo's early uses of the name KARGO (February 2000) in connection with its wireless connectivity products is attached as Exhibit C. Also, examples of Kargo's current use of the designation KARGO on or in connection with wireless/mobile technology can be viewed at www.kargo.com.

13. Registration No. 2,756,549 KARGO issued to Kargo LLC on August 26, 2003 for goods and services in International Classes 9, 38, and 42, having an intent-to-use priority date of December 8, 1999. The record owner of Registration No. 2,756,549 KARGO is Kargo LLC. However, the current owner of this registration is ACK Ventures Holdings LLC ("ACK"). The certificate of registration, and a confirmatory assignment from Kargo Inc. (previously Kargo LLC) to ACK, are attached as Exhibit D.

14. Kargo holds an exclusive license from ACK to protect and defend trademark rights associated with the KARGO business, including the right to bring suit in Kargo's own name. At all relevant times, ACK and its predecessors in interest have been the sole proprietors and have controlled the use of the trademark KARGO, and Kargo (and its predecessors) have been licensed users thereof. Kargo's uses of the mark KARGO referred to herein, inure to the benefit of ACK as the owner of the mark.

15. The aforesaid Registration No. 2,756,549 KARGO is valid, subsisting, unrevoked, and uncancelled. As such, it evidences Kargo's exclusive rights to use the mark (under license) in connection with the goods and services recited therein.

16. Kargo is also the applicant for registration of the trademark KARGO Serial No. 78/423,372 filed on May 22, 2004 for goods and services in International Class 35. See printout from Trademark Office database attached as Exhibit E.

17. In addition to other public uses of its registered trademark, Kargo operates an active website located at www.kargo.com with first use long prior to May 27, 2003, the earliest filing date of any of Advance's applications and prior to any date of priority or use that Advance can be entitled to (Exhibit C).

18. Kargo learned of Advance's launch of the CARGO magazine in 2004. On August 25, 2004, Kargo commenced a proceeding at the Trademark Office's Trademark Trial and Appeal Board ("TTAB") to oppose Advance's application to register Application No. 78/254,528 CARGO. On April 19, 2005, Advance counter-claimed to cancel Kargo's prior registration of KARGO (on technical grounds having no equitable substance). Advance has alleged that Registration No. 2,756,549 KARGO issued August 26, 2003 is invalid. Those

8

allegations are without merit. Advance alleged that Kargo committed "fraud" on the Trademark Office in filing a declaration of use, in that some of the recited goods allegedly were not in use. But in fact, Kargo relied upon the advice of the Trademark Examiner to file a declaration of use in that case, with a specimen photograph showing the mark KARGO on the goods. Applicant did that and submitted a photo showing the mark KARGO on the screen of a cellphone. All the recited goods were "in use" in any ordinary sense of that term that Kargo could understand: the mark KARGO was actually displayed on cellphone screens; the mark had been affixed to cellphones shipped in interstate commerce for test purposes; and cellphones were sold from Applicant's website, prominently displaying the mark KARGO. Any alleged inaccuracies in the declaration of use were neither the culpable fault of Kargo, nor material. Advance has also alleged that KARGO "abandoned" its mark for nonuse, but such allegations are patently unsupportable, since as evidenced herein (Exhibits F-G) the mark is in use and is not abandoned.

19. Discovery has been taken in that TTAB proceeding. The discovery period had already closed on November 22, 2005, but on December 22, 2005, Advance with the consent of Kargo, filed with the TTAB a Motion to Reopen and Reset Discovery and Trial Dates. But due to the commencement of this action, the TTAB proceedings will be suspended in accordance with the TTAB's practice, which defers to the district courts in such circumstances (37 C.F.R. §2.117(a)).

20. In the course of discovery in the TTAB proceedings, Kargo was lulled into the assurance that Advance did not intend to bring CARGO magazine to wireless connectivity devices. Advance claimed that it lacked sufficient information to respond to whether it was planning to offer content for receipt or use on cellphones, PDA's or other wireless products in connection with the CARGO name (See Excerpts from Kargo's First Requests for Admissions, and Advance's December 21, 2004 Response to Request for Admission No. 16, attached as Exhibit H-I). Hence, Kargo reasonably thought that Advance did not have such a business plan; and continued to pursue its claim in the first instance at the TTAB, rather than in a district court.

URGENT NEED FOR RELIEF

21. Despite Advance's TTAB discovery response, Advance (without notice to Kargo) launched a webpage for utilizing CARGO magazine on a wireless connectivity device, in September 2005. A copy of Advance's announcement is attached as Exhibit J. The "CARGO TO GO" section of Exhibit J, and the "Instant Replay" web page of Exhibit K, advise consumers how to load text from CARGO magazine onto their wireless connectivity devices for remote use. The "Instant Replay" web page is size-optimal for display on a cellphone, as distinguished from full-size desktop web browser. In December 2005, Advance served an Additional Supplemental Response to Kargo's First Request for

10

Admission No. 16, admitting for the first time that "it is exploring with vendors the possibility of offering content for its magazines through different media, including cell phones, PDA's and other wireless products, and including the content of CARGO magazine." A copy of the Response is attached as Exhibit L. On its "Instant Replay" webpage Advance now promotes a service called "One-Thumb Cell-Phone Games", providing users with the ability to play games on their cellphones. Printouts from Advance's website showing this new service are attached as Exhibit M. Advance's newly-launched service is like Kargo's "GameDay" application which offers games to end users onto mobile platforms. Advance's "One-Thumb Cell-Phone Games" accessed through its unauthorized CARGO website, steadily bring Advance's services closer and closer to the services provided by Kargo under the mark KARGO. Advance has just hired an executive from *NY Times Online*, for the purpose of advancing its unauthorized infringing activities. See article dated December 12, 2005, regarding Advance's Conde Nast Media Group launching "cross-platform" initiatives (attached as Exhibit N). Upon information and belief, Advance also recently hired an executive from one of Kargo's competitors (Vindigo) to run its planned wireless services business. See website printouts showing Ms. Carrie Himelfarb-Seifer's previous association with Vindigo and current association with Conde Net, an affiliated company of Advance's Conde Nast Media Group which runs web and wireless business (attached as Exhibit O). Ms. Himelfarb-Seifer's background and reputation in the wireless industry reveal Advance's imminent expansion plans. Upon information and belief, Advance also hired Juice Wireless to build a full

wireless website for Advance's magazines – which likely would include CARGO magazine.

22. Now, at the preeminent consumer electronics industry trade show (CES) held this month (January 2006) in Las Vegas, Advance had a booth display under the CARGO banner. Advance also had reporters with CARGO badges, covering the show. Two photographs of Advance's CARGO booth are attached as Exhibit P. A printout from Advance's website www.cargomag.com stating that "*Cargo*" was present at CES, is attached as Exhibit Q. These latest and current developments now give rise to an imminent threat of irreparable harm to Kargo, necessitating intervention of the Court to prevent Advance from proceeding with expansion of its unauthorized activities into Kargo's core business field of wireless media. On information and belief, Advance is about to launch a full-featured wireless site that exploits the editorial content of its unauthorized CARGO website and magazine, using the CARGO name.

23. Based on the similarities of the marks and the goods and services, the public and trade are likely to associate the services provided by Kargo under the mark KARGO with Advance or with Advance's goods and services, or to believe that Advance's services are sponsored, endorsed or licensed by Kargo, or that there is some relationship between Advance and Kargo. Advance's CARGO magazine and its service of downloading CARGO magazine content and games to wireless connectivity devices is confusingly

similar to Kargo's mark KARGO. Advance's Concept/Mission Statement for its Cargo Magazine states that "CARGO's product based men's lifestyle premise represents a defining difference in *a crowded space that's starting to lack definition*" (Exhibit B hereto). The virtual identity of these marks in a "*crowded space that's starting to lack definition*" breeds an environment in which actual confusion is much more likely to occur and has actually occurred, and creates "reverse" confusion (i.e., customers and potential customers' wondering if Kargo is the second comer exploiting Advance's CARGO name recognition). Kargo is entitled to the relief requested, regardless whether Advance's actions create direct confusion and/or "reverse" confusion with Kargo's products and services under the KARGO mark.

24. Actual confusion has in fact occurred between the marks used by the Parties. The marks are legally (and for all practical purposes) equivalent since they are identical but for the substitution of a C for a K (letters which sound and even look alike (since the letter C resembles the final strokes of a K: <)). Advance admitted that CARGO and KARGO have a similar sound; see Excerpt of Advance's Answer to Amended Notice of Opposition (¶ 13) dated April 19, 2005 (attached as Exhibit R). This similarity becomes obvious when these two marks are spoken, as they were in a radio broadcast of Kargo's CEO's interview during this month's annual CES tradeshow, when it was impossible for listeners to distinguish between Advance's services provided under the name CARGO and Kargo's services provided under the name KARGO. Instances of actual

13

confusion include (without limitation): 1) During a meeting, a representative of the Very Style Guide publication thought that CARGO magazine was Kargo's magazine; 2) During a meeting with Starcom Media Vest Group to promote sponsorship that Kargo was arranging with the magazine Us Weekly®,  Starcom Media Vest Group's Media Director asked why Us Weekly® would want to use a competitor's interface [i.e., Advance's CARGO magazine's interface] to put its magazine content into a wireless format; 3) During a presentation by Kargo to Virgin Mobile, Kargo was questioned regarding Kargo's presumed affiliation with Advance's CARGO magazine; and 4) this month at the 2006 CES trade show in Las Vegas, after Kargo's CEO's radio interview, a reporter from the NY Times approached Kargo's CEO and thought he was from Advance's CARGO magazine.

25. Use of the mark CARGO by Advance in the field of wireless connectivity is likely to cause further confusion, cause mistake or deceive the public, and cause the public to believe that the goods and services sold under the mark CARGO emanate from or are otherwise sponsored or endorsed by Kargo.

26. The Parties' offerings in trade overlap (e.g., they both provide magazine content, cellphone and other product review services, and games to consumers). Their channels of trade overlap (e.g., they both use co-branded promotions with major consumer electronics  manufacturers such as SONY, and

participate in the CES show). Moreover, the trade dress of Advance's CARGO magazine (and website) has the very same color scheme (orange and gray) previously adopted and used by Kargo for its KARGO brand identity. An exemplary CARGO Magazine cover page is attached as Exhibit J; and a printout from Kargo homepage is attached as Exhibit F.

27. Advance's launch of CARGO magazine by cellphone and other wireless connectivity devices threatens an imminent change in the status quo with resulting irreparable harm to Kargo's core business.

28. Advance's September 2005 launch of its wireless application (via the "Instant Replay" web page advertised on the CARGO TO GO section of Advance's printed CARGO magazine), its hiring of wireless industry executives, its displays at the CES convention this month, its launch of the "One-Thumb Cell-Phone Games" service, and its threatened launch of widespread availability of CARGO magazine by wireless connectivity devices, represent a growing, progressive encroachment by Advance upon Kargo's prior rights, warranting (inter alia) immediate injunctive relief to preserve the status quo and protect Kargo's valuable rights.

29. Advance must have known from the outset that it was simulating Kargo's mark, but proceeded to do so at its own risk. Advance has had actual notice of Kargo's objection since 2004, when Kargo filed opposition

against Advance's application for its mark CARGO. Any further investment made by Advance since then has been with knowledge that its services had to be discontinued. Since Advance has exceeded the reasonable bounds of proper conduct, Advance should be put *well back* of the boundary line to insure that further harm to Kargo will be averted and to remedy Advance's unlawful conduct to date. Hence, Advance should be enjoined preliminarily and permanently from any and all use of CARGO (or any other simulation of the prior established brand KARGO) (including without limitation CARGO TO GO, CARGO CARAVAN, and "cargomag.com") that is likely to and has in fact caused confusion, mistake or deception.

30. Advance' acts as aforesaid have been willful and intentional, and without license or consent. Advance persists in such acts, and indeed now expands the scope of its progressive encroachment, despite full awareness of Kargo's objections.

**COUNT I**

**FALSE DESIGNATIONS OF ORIGIN
AND FALSE DESCRIPTIONS AND
REPRESENTATIONS UNDER SECTION 43(a)
OF THE TRADEMARK ACT OF 1946**

31. Kargo repeats and realleges the allegations contained in the foregoing paragraphs 1 through 30, inclusive, as though fully set forth herein.

32. Advance's aforesaid acts constitute the use in commerce, directly and/or contributorily, of false designations of origin and false and misleading descriptions and representations of fact which have caused and are likely to cause confusion, to cause mistake and deceive as to the affiliation, connection and association of Advance with Kargo and as to the origin, sponsorship or approval of Advance's goods and commercial activities; and misrepresent the nature, characteristics and/or quality of Advance's goods in violation of Section 43(a) of the Trademark Act of 1946, 15 U.S.C. § 1125(a).

33. The aforesaid acts of Advance have caused and will continue to cause great and irreparable injury to Kargo, and unless such acts are restrained by this Court, they will be continued and Kargo and the public will continue to suffer great and irreparable injury. Kargo has no adequate remedy at law.

17

## COUNT II

## TRADEMARK INFRINGEMENT

34. Kargo repeats and realleges the allegations contained in the foregoing paragraphs 1 through 33, inclusive, as though fully set forth herein.

35. Advance's conduct as aforesaid constitutes use in commerce, without license or consent, of a colorable imitation of the registered mark KARGO in connection with the sale, offering for sale, distribution, or advertising of goods and services similar to the goods and/or services registered for the mark KARGO, on or in connection with which such use has in fact caused and is likely to cause confusion, or to cause mistake, or to deceive.

36. Advance also colorably imitated the registered mark KARGO and applied such colorable imitation to labels, signs, prints and advertisements of its print publication CARGO and its website www.cargomag.com, intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertisement of goods and services similar to the goods and/or services registered for the mark KARGO, on or in connection with which such use has in fact caused and is likely to cause confusion, or to cause mistake, or to deceive.

37. The aforesaid acts of Advance have caused and will continue to cause great and irreparable injury to Kargo, and unless such acts are restrained

18

by this Court, they will be continued and Kargo and the public will continue to suffer great and irreparable injury. Kargo has no adequate remedy at law.

## COUNT III

## UNFAIR COMPETITION

38. Kargo repeats and realleges the allegations contained in the foregoing paragraphs 1 through 37, inclusive, as though fully set forth herein.

39. Advance's conduct as aforesaid constitutes, directly and/or contributorily, trade dress infringement, unfair competition, misappropriation, passing off, unlawful, unfair and fraudulent business practices, and the making of false or misleading statements in connection with the offering for sale and sale of goods in violation of the common law of the State of New York and the laws of the several states of the United States.

40. Advance's aforesaid acts have caused and will continue to cause great and irreparable injury to Kargo, and unless said acts are restrained by this Court, they will be continued and Kargo and the public will continue to suffer great and irreparable injury. Kargo has no adequate remedy at law.

## COUNT IV

## DECEPTIVE ACTS AND PRACTICES

41. Kargo repeats and realleges the allegations in the foregoing paragraphs 1 through 40 inclusive, as though fully set forth herein.

42. By reason of its aforesaid acts, Advance has engaged in deceptive trade practices in the conduct of its business in violation of N.Y. Gen. Bus. Law § 349 and the laws of the several states.

43. Said acts of Advance have caused and will continue to cause great and irreparable injury to Kargo and to the public in general, and unless such acts are restrained by this Court, they will be continued and Kargo and the public will continue to suffer great and irreparable injury. Kargo has no adequate remedy at law.

**WHEREFORE,** Kargo prays:

I.     That Advance, its officers, directors, agents, servants, employees, suppliers, ISPs, distributors, retailers, attorneys, successors and assigns, and all persons in privity, concert or participation with them, or any of

them, including without limitation "CondeNet" and "CondeNet, Inc.", be preliminarily and permanently enjoined and restrained:

A. from using upon or in connection with goods and services similar to the goods and/or services used, sold, registered and/or applied for the mark KARGO, or in connection with the advertising, distribution, offering for sale or sale of any such goods and/or services, the trademark and trade dress used by Kargo or any other simulation of the prior established brand KARGO for goods and services similar to the goods and/or services used, sold, registered and/or applied for the mark KARGO, or any other reproduction, counterfeit, copy or colorable imitation of the trademark and trade dress used by Kargo or any other simulation of the prior established brand KARGO; Kargo's corporate name; or any other word, symbol, or device so similar thereto, including without limitation the name CARGO (and variations, including without limitation CARGO TO GO, CARGO CARAVAN, and "cargomag.com") as to be likely to cause confusion, to cause mistake or to deceive;

B. from making any false or misleading representations or descriptions in connection with the advertising or promotion of goods and services similar to the goods and/or services used, sold, registered and/or applied in connection with the mark KARGO, that tend to misrepresent the nature, characteristics or qualities of Advance's goods, services or commercial activities;

21

C. from doing any other act or thing calculated or likely to cause confusion or mistake among the trade or the public or to deceive purchasers into thinking that Advance's goods and/or services are Kargo's goods and/or services, or come from or are affiliated with Kargo, or are sponsored or approved by Kargo, or come from the same source as Kargo's; from encouraging the passing off of its goods and/or services in place of Kargo's; and from otherwise engaging in unfair business acts and practices or competing unfairly with Kargo or causing harm to its business reputation; and

D. from producing or authorizing anyone to produce goods and/or services similar to the goods and/or services used, sold, registered and/or applied for in connection with the mark KARGO that are copies or simulations of the KARGO trademark and/or trade dress or any other simulation of the prior established brand KARGO, or from distributing or in any way offering to the public goods and services similar to the goods and/or services used, sold, registered and/or applied for in connection with the mark KARGO, or other goods and/or services that are confusingly similar to Kargo's.

II.    That each and every one of Advance's applications and/ or registrations of CARGO or any other simulation of the prior established brand KARGO (including without limitation CARGO TO GO, CARGO CARAVAN, and "cargomag.com"), be withdrawn, denied, declared null and void, and cancelled.

III.   That Advance cease and desist from filing trademark applications for CARGO or any other simulation of the prior established brand KARGO (including without limitation CARGO TO GO, CARGO CARAVAN, and "cargomag.com").

IV.   That Advance be directed to distribute corrective advertising to redress the false and misleading statements and representations it has made; or that Kargo be awarded an amount sufficient to prepare and disseminate the same.

V.   That Advance be ordered to deliver up to Kargo for destruction all advertisements and promotional materials, labels, signs, prints, packages, wrappers, receptacles and other written or printed materials in its possession or control that bear the trademark or trade dress used by Kargo or the designation CARGO or any other simulation of the prior established brand KARGO (including without limitation CARGO TO GO, CARGO CARAVAN, and "cargomag.com") for goods and services similar to the goods and/or services used, sold, registered and/or applied for the mark KARGO and any other copies, reproductions, counterfeits, or colorable imitations thereof or that are substantially similar to the KARGO trademark and/or trade dress or any other simulation of the prior established brand KARGO; and that Advance be ordered to deliver up to

Kargo for destruction all designs, drawings, printing devices, plates, molds, matrices and other means for making the same.

VI.  That Advance be directed to file with the Court and serve upon Kargo (within 30 days) a written report, under oath, setting forth in detail the manner and form in which Advance has complied with such injunction.

VII.  That Kargo recover Advance's profits arising from the use and sale by Advance of the complained-of marks, names, goods and/or services, and Kargo's damages arising therefrom; and pursuant to Section 35(a) of the United States Trademark Act of 1946, 15 U.S.C. § 1117(a), that Kargo recover an amount which is three times the amount found as actual damages arising out of Advance's aforesaid acts.

VIII.  That Kargo be awarded punitive damages, in an amount to be determined at trial, by reason of the willful and wanton nature of Advance's acts.

IX.  That Kargo be awarded its reasonable attorneys' fees.

X.  That Kargo have and recover its costs and disbursements.

24

XI.    That Kargo have such other and further relief as the Court may deem just.


Dated: January 24, 2006

Respectfully submitted,
R. KUNSTADT, P.C.

By: _____
Robert M. Kunstadt (RK-7230)
Ilaria Maggioni (IM-7220)
729 Seventh Avenue
New York, New York  10019
(212) 398-8881

Counsel for Plaintiff
Kargo Global, Inc.

25

## VERIFICATION

I, Harry B. Kargman, do hereby declare:

That I am the President of Kargo Global, Inc., Plaintiff in this action; that I have read the foregoing Verified Complaint and know the contents thereof; and that the facts and matters alleged therein are true in substance and in fact to the best of my knowledge, except those matters alleged on information and belief, and as to those, I believe them to be true.

Declared under penalty of perjury of the laws of the United States of America, this 24 day of January, 2006, at Seattle, Washington.

Signed: ___ /harry Kargman/ ___

Harry B. Kargman

26

## LIST OF EXHIBITS

Exhibit A:      Morgan Stanley Dean Witter Flyer of Presentation Dated February
                5, 2001, Entitled "The M Files - Developing Usable Apps with
                Kargo"

Exhibit B:      Advance's CARGO Magazine Concept/Mission Statement

Exhibit C:      Kargo's Flyer of Invite to CTIA Wireless 2000 Show,
                February 27-29, 2000, New Orleans, LA

Exhibit D:      Plain Copy of Certified Copy of Trademark Certificate for Reg. No.
                2,756,549 KARGO; and Copy of Confirmatory Assignment from
                Kargo, Inc. (previously Kargo, LLC) to ACK Ventures Holdings, LLC
                executed January 20, 2006

Exhibit E:      U.S. Trademark Office Record for Trademark App. No. 78/423372
                KARGO

Exhibit F:      Homepage of Kargo's Website www.kargo.com

Exhibit G:      Other Website Printouts from Website www.kargo.com

Exhibit H:      Excerpt from Kargo's First Requests for Admissions Dated
                November 22, 2004

Exhibit I:      Excerpt from Advance's Response to Opposer's First Request for
                Admissions, Response to Request No. 16, Dated December 21,
                2004

Exhibit J:      Copy of CARGO Magazine Cover, September 2005 Issue

Exhibit K:      Website Printout Showing "Instant Replay" Web Page, from
                www.cargomag.com/main/replay

Exhibit L:      Advance's Additional Supplemental Responses to Opposer's First
                Request for Admissions, Dated December 7, 2005

Exhibit M:      Website Printouts Showing "One-Thumb Cell-Phone Games"
                Interface accessible from the "Instant Replay" Web Page
                www.cargomag.com/main/replay, and games listing from
                www.cargomag.com/main/replay/060106marede/

Exhibit N:      Article by Gavin O'Malley entitled "Conde Nast Taps Cross-
                Platform Exec, Will Leverage Online, Print", Dated December 12,
                2005, from

http://publications.mediapost.com/index.cfm?fuseaction=Articles.sh owArticleHomePage

Exhibit O: Website Printout from the Mobile Marketing Association (MMA) Website http://www.mmaglobal.com/modules/content/index.php?id=9 Showing Ms. Carrie Himelfarb-Seifer's Affiliation with Conde Net; and Website Printout from the iMedia Connection Website http://www.imediaconnection.com/bios/bio.asp?firstName=Carrie&l astName=Himelfarb Showing Ms. Himelfarb's Biography and Association with Vindigo

Exhibit P: Photographs from CES Convention, January 2006, Las Vegas

Exhibit Q: Website Printouts from Advance's Website www.cargomag.com

Exhibit R: Excerpt of Advance's Answer to Amended Notice of Opposition And Counterclaims for Cancellation of Registration No. 2,756,549, Dated April 19, 2005